May it please the Court, my name is Stuart Filinski. I'm here appearing today for Petitioner Mr. Hassan. I would like to inform the Court that Mr. Hassan's attorney, Judith Wood, was admitted to the hospital last Thursday, still at Huntington, and so I am in the position of being a veteran pinch hitter, so to speak. So if I'm not as well prepared as I should be, my apologies in advance to the Court. We understand. Thank you, Counsel. In review of the record, I can pass on that my first impression is based upon how similar cases are being handled before other cases in this Court and other circuits. And the question that came to my mind is that this case strikes me as appropriate for referral to mediation for possible remand for administrative closure that is being done in other cases. There is no criminal record, and I will let the Court decide. What would be the basis for that? Explain. I'm not intricately familiar with all the intricacies of administrative closure. And why the government would want to do, ICE would want to do that, or whoever does that. No problem, Your Honor. There was a case that came out of the Board in January of last year called Abitissian. I don't have the site offhand, but A-B-E-T-I-S-Y-A-N. And it allowed the Board or immigration judges to administratively close a case. It remains alive, so to speak. Sure, but what is it about the circumstances here that would warrant such action on the part of the agency? Well, what I can say from what the Second Circuit did is on all immigration cases, they put a stay in place. I'm not talking about the Second Circuit. I'm just asking you. You said you had reviewed this file. Yes, Your Honor. And you wanted to share with us your practice and experience. You said this looks like this case might be suitable for mediation, possibly for administrative closure. And I'm asking you. What's the basis? What's the basis for that? It would be pure discretion on the part of the Board and the government, not reviewable by this Court, of course. And all I can represent to the Court, it does happen. May I suggest, Counsel, that that's a matter that we're going to have to hear from the government on. We understand what your plea is, but the question I'd like you to focus on is whether we have jurisdiction here. Was this claim on the social group exhausted? I would submit that it was, Your Honor. The social group is based upon actually more religion of the social group, and it's kind of hard to define in my mind. Well, where was it presented? Can you show us where in the record it was presented to the BIA and ruled upon by the BIA? I cannot give you a page site. You know, in reading it, I do believe it was presented. And, you know, again, I'm not in a position to give you a page site. The second issue is whether or not the denial of the motion to reopen was an abuse of discretion. Is there any indication that there was a showing of changed country conditions which could affect that decision? The problem that we have with Bangladesh is that you may be subject to persecution today. Just wait, and you won't be. Wait some more, and you will be. And I would submit to this court that we shouldn't be subject to the administrative procedures of when you're going. The State Department reports do show that I believe it was a phrase that there is a very high degree of political violence in Bangladesh that we in the United States really can't comprehend. Okay, but the problem here is whether or not there was an abuse of discretion based on the record. And I gather what you're telling me is that there probably wasn't that much in this record that would bear on it. No, I didn't say that, Your Honor. Also, I would point out that – Well, what is in the record? Tell us what is in the record that would constitute an abuse of discretion for failure to reopen or denial of the motion to reopen. Also, Your Honor, there is a claim for convention against torture where that really isn't dependent upon changed country circumstances. The issue is, is it likely to happen? And that was raised in both motions taken together. All right. We'll have a look in the record. Counsel, maybe we ought to hear from the government right now. You have four minutes to use and rebuttal if you wish. Thank you, Your Honor. Thank you. Good morning. May it please the Court. Arthur Rabin on behalf of the Attorney General. There are two petitions before the Court. It is the government's position that the initial petition, that's 08-72747, has been waived. And the reason I say that is because if you look at Petitioner's brief to this Court, none of the issues in that petition where the Board decided that issue have been raised in that brief. How about the cat claim? Wasn't there a cat claim in that first petition? There was a changed country petition claim in that initial decision. But underlying that, wasn't there a cat claim in place someplace? There was a cat claim, but the cat claim that was briefed is based on the fact that if Petitioner is sent back, they fear that the wife's ex-husband will come after Petitioner, will come after Mr. Hassan. Your argument, if I understand it, is that the cat claim and the asylum claim based on political opinion was not raised in his opening brief before us. Is that correct? Yes. You just have his claim that because of the ex-husband, he's entitled to asylum and cat relief. That's correct, Your Honor. So the question about whether the social group claim, particular social group, was exhausted, I guess bears on whether his description of the relationship or his fear of the ex-husband raises a particular social group issue to the BIA. So can you tell us why it does not in your view? That's because if you actually look at the record and their motion to reopen, based on the claim that the ex-husband is apparently a lunatic and abusive and has threatened to kill Petitioner, there is no nexus. First of all, there's no particularity in the motion to reopen that actually uses anything to show that there's a family social group claim. That is, they don't show particularity, social visibility. None of the elements of particular social group are before the board. Instead, there's a general claim that because the husband is so abusive and has threatened Petitioner through the wife's family, that should he return, this personal animosity will lead to him being killed and tortured and all these bad things. So the board, when it looked at that claim, had no idea that he's actually raising some kind of a family-slash-particular social group claim. And that's why the board, in its decision, specifically only addressed as to whether or not there's a changed country condition based on his marriage to this woman whose ex-husband is threatening him. And they said, well, that's a personal animosity, personal vendetta issue, and there's plenty of 930 cases that say that is not sufficient to show asylum on account of any of the protected grounds. So if he doesn't show changed country conditions, his second petition is just time and number barred? Yes, Your Honor, because at this point he's already raised. That ends the? That's it, Your Honor, yes. Unless he decides to file some kind of a, based on his marriage to that citizen. Does he have a cat claim as well? The cat claim that he raises in the second motion to reopen? That's the one that he says the husband will kill me, and that's why I have a cat claim, because he's threatened to. He did all these evil things, like burning cigarettes to the wife and all this stuff. He says he'll do all these things to me. And the board said, well, how does that show that the government of Bangladesh will acquiesce or not protect you from this man? I guess my question was embedded in my question was, all the claims that are raised in the second motion to reopen are foreclosed unless he can show changed country conditions. Is that right? That's correct, Your Honor. So there's nothing unique about a cat claim? No, he still has to show that because of changed country conditions he'll be tortured. And that's a different analysis than, say, asylum. But it's a heightened burden. But nonetheless, all his claims stem from the same factual narrative. That is that I married a woman recently. Her husband found out. He's very abusive. And if I go back, he's going to kill me, you know, torture me and kill me. Counsel, would you respond to Mr. Falinski's suggestion that this is a case for administrative closure? Well, Your Honor, that procedure is currently being followed only in the Second Circuit, and that is because the – and only for particular types of cases. That is, Chinese asylum cases where the government has not been able to repatriate certain people because the Chinese government will not give us assurances that they will not be – Well, now, wait a minute. We have two cases on our docket in the next several days that we've already granted a motion to remand. Of course, it was a joint motion. But the point is that it's not just the Second – I mean, Second Circuit isn't exclusive to this, it seems to me. There has to be something to show the government cannot repatriate. That's the ground. And so since we cannot repatriate this man, we will not – we'll simply close the proceedings. How is this triggered? Does the petitioner have to contact your office to raise the issue? How does that work? Typically, yes. You know – Has that been done in this case? That has not been done in this case. Typically, in the Second Circuit, the court actually issues the order. And then, you know, suggesting – basically putting the case in 90-day abeyance. But that must be some Second Circuit policy affecting Chinese aliens. Is that correct? Typically just Chinese, but anyone that we cannot show that will be repatriated. And the order comes out from the court, 90-day stay of all proceedings, putting basically the case in abeyance. Then the government and the Petitioner's Council will communicate and see if there are sufficient equities aside from the merits of the case, the legal merits, for that alien to be – their claim is basically closed. The board proceeding is closed, administrative closed, subject to being reopened without prejudice. So Mr. Anarwal, does his wife – does Mr. Anarwal's wife, does she have any status in the country? Your Honor, she got asylum. Has she adjusted that to a lawful residency? The only thing we have is the IJ decision granting her asylum in the record. How many years ago was that? I believe that was a couple of years ago. She actually did submit a declaration in here, in the record. She does not indicate, to my knowledge. Well, I guess he could always ask. Yeah, so basically if she does adjust status and does become either a USC – a United States citizen or a lawful permanent resident, based on her status, he's also eligible to adjust status. But he has to show, you know, visa availability and things like that. Okay. Anything further, Counsel? Subject to this Court's questions, no. Thank you, Counsel. Mr. Politsky, you have a little reserved time. I just would like to address one issue on the Second Circuit procedure, was the 90-day abeyance was on all immigration cases. And I believe the order is published. Again, I can't give the site, but, you know, and they stated why they were doing it. And it was on all cases, and the ones Ms. Wood's office has gone. One was from Bangladesh, very similar to this case. The other one was from Nigeria. Neither one was Chinese. Very well, Counsel. Thank you. Thank you very much. The case just argued will be submitted for decision.
judges: O'scannlain, Paez, Ikuta